IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JANICE CHO,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      1:18-cv-1062 (LMB/IDD)
                                     )
JOONG ANG DAILY NEWS WASHINGTON,     )
      INC., et al.,                  )
                                     )
            Defendants.              )

MEMORANDUM OPINION

Before the Court is plaintiff's counsel, (Michael) Hyunkweon Ryu's ("Ryu") Motion for

Award of Reasonable Attorney's Fee in which he seeks a total award of $92,477.90 consisting of

$75,841 in attorney's fees and $16,636.90 in costs. The motion has been fully briefed and

argued. For the reasons discussed below, the motion will be granted in part and Ryu will be

awarded a total of $50,097.39, consisting of $44,503.37 for attorney's fees and $5,594.02 for

costs.

## I.    BACKGROUND

This civil action arises out of plaintiff Janice Cho's ("Cho" or "plaintiff") allegation that

her former employer, Joong Ang Daily News Washington, Inc. ("JA Wash."), and its related

corporate entities, Joong Ang Media Network USA, Inc. ("JA USA"), and Joong Ang Daily

News California, Inc. ("JA Cali.") (collectively, "defendants")[1] violated the Fair Labor

Standards Act (the "FLSA") by not paying her proper overtime wages.

---

[1] Defendants are wholly owned U.S. subsidiaries or affiliates of Korean newspaper and media
company Joong Ang Ilbo. Am. Compl. [Dkt. No. 25] at 1.

Cho was employed by JA Wash. in its Fairfax County, Virginia office from 2007 until the company ceased operations in the spring of 2018. In her complaint, Cho alleged that her typical work hours were Monday through Friday, 10:00 am to 7:00 pm, but that she regularly worked until 9 P.M. and occasionally on the weekends. Am. Compl. [Dkt. No. 25] ¶¶ 17–18. She claimed that until March 2017, when she worked after 7 P.M. on weekdays, she was paid $10 per hour for the excess hours, which increased to $15 per hour in April 2017. Id. ¶ 23. When Cho worked over the weekend, she was allegedly paid $80 per day. Id. She claimed that this rate of pay violated the FLSA in part because it did not constitute time and one-half her regular rate of pay. She further alleged that defendants automatically deducted an hour each day for lunch even if she worked through lunch, which she did approximately three out of the five days of the work week. Id. ¶¶ 20, 21. In her original complaint, plaintiff claimed she was owed $26,454.58 for unpaid overtime wages plus $26,454.58 in liquidated damages, for a total of $52,909.16, not including attorney's fees. Compl. [Dkt. No. 1] ¶ 27.

In April 2018, before the defendant went out of business, it offered plaintiff a severance package of $7,065.28. [Dkt. No. 82] at 4. She rejected that offer, and instead on May 7, 2018, sent an email in Korean to former and current employees of defendants with the subject line "Legitimate Rights of a Worker Violated by a Mid-Level Manager through Immorality and Fabrication of Document," in which she allegedly expressed frustration about not being paid overtime wages and insinuated that defendants had fabricated JA Wash.'s circulation numbers so that it would fall within the small newspaper exemption to the FLSA and not have to pay overtime. See [Dkt. No. 79-5].

Plaintiff retained Ryu as her FLSA counsel on July 9, 2018 on a contingency basis, under which he agreed to be compensated by the greater of either the court-awarded fees and costs, or

one-third of the gross recovery, consisting of Cho's recovery and any court-awarded fees. [Dkt. No. 79-17] ¶ 9. Ryu filed plaintiff's initial Complaint on August 24, 2018. [Dkt. No. 1]. Because service of process was defective, see [Dkt. No. 16], defendants asserted that they were not made aware of this lawsuit until October 10, 2018, when they received a copy of an Entry of Default, which issued after they failed to respond to the lawsuit. See [Dkt. No. 13]. On October 13, 2018, defendants' counsel emailed Ryu to request that he move to set aside the default and also file an amended complaint to clean up errors within it. [Dkt. No. 79-1]. Rather than extending defense counsel the courtesy of withdrawing the request for default, Ryu rejected that proposal on October 15, 2018, and asked defendants' counsel to "let [him] know if you agree to the calculations [of damages], or if not, on what basis." Id. Because Ryu refused to move to set aside the default, defendants had to move to set it aside on October 18, 2018. [Dkt. No. 12]. Their motion was granted the same day it was filed, consistent with the Fourth Circuit's "strong preference that, as a general matter, defaults be avoided," Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010), and because defendants "demonstrated that service of process was defective, ha[d] been diligent in their prompt response such that plaintiff will not be prejudiced, and appear[ed] to have non-frivolous defenses to plaintiff's claim." [Dkt. No. 16].

One day before moving to set aside the default, JA Cali. filed a lawsuit against plaintiff in California state court, raising claims of defamation and false light arising out of plaintiff's May 7 email and seeking $250,000 in damages. See [Dkt. No. 79-2] at 10-15. The timing of this lawsuit was suspect, given that JA Cali. had allegedly been aware of Cho's email since May 7, but only filed its defamation lawsuit against her on October 17, 2018, immediately after learning that Cho had sued them under the FLSA. This timing suggested that the defamation lawsuit was filed to

give defendants some bargaining power against plaintiff or to retaliate against her for filing the FLSA lawsuit. Cho retained Ryu on an hourly basis to defend her in the defamation action. [Dkt. No. 79-19]. Ryu retained local California counsel, successfully removed the defamation action to federal court in California, and ultimately had it transferred to this district where it was consolidated with this civil action. Cho subsequently amended her complaint to add a claim that the California lawsuit constituted retaliation in response to her protected activity in violation of the FLSA, along with an additional demand for actual, compensatory, and punitive damages and attorney's fees and costs. [Dkt. No. 25].

On November 7, 2018, defendants' counsel moved to withdraw because he was "struggling to communicate with the firm's Korean-speaking clients and has been unable, despite diligent inquiry, to confirm various facts needed to determine the validity of various potential defenses to this action." [Dkt. No. 18] at 2. Although motions by counsel to withdraw from litigation are not usually opposed, Ryu filed an opposition. [Dkt. No. 20]. Nevertheless, defendants' counsel's motion was granted because he had established good cause for the relief requested. [Dkt. No. 23]. On December 5, 2018, defendants' new counsel, James Y. Victory ("Victory"), attempted to initiate settlement efforts with Ryu. [Dkt. No. 82-2] at 2.[2] In response, on December 20, 2018, Ryu made a settlement demand of $318,870.80, consisting of $252,909.16 in damages and $65,961.64 in attorney's fees and costs, which offer defendants rejected. Id. at 6-8. On February 25, 2019, defendants made a global settlement offer of $45,000, consisting of $30,000 to the plaintiff for her damages and $15,000 for her attorney's fees. Id. at 9. Ryu rejected that offer and responded with a demand of $334,655.58, which consisted of

---

[2] Emails documenting the parties' settlement efforts have been filed in the public docket and neither party has sought to seal them.

4

$229,000 in damages and $105,655.58 in attorney's fees and costs. Id. at 11-2. Defendants rejected this counteroffer, asserting that it "is too high and unrealistic; it is not well grounded in facts nor law. You are over-litigating the matter." Id. at 13. On March 27, 2019, plaintiff offered to settle for $300,000, to which defendants responded by offering $60,000, consisting of $20,000 in damages and $40,000 in attorney's fees, with additional reimbursement to be provided for reasonable costs. Id. The parties did not settle.

Defendants moved to dismiss the amended complaint's claim for punitive damages, because "the [FLSA] statute makes no explicit mention of punitive damages and the remedial scheme makes clear that the right afforded to aggrieved employees is compensatory in nature," and "courts may not engraft punitive damages onto the statute." [Dkt. No. 48] (quoting Lanza v. Sugarland Run Homeowners Ass'n, Inc., 97 F. Supp. 2d 737, 742 (E.D. Va. 2000)). On April 18, 2019, at the final pretrial conference, the defendants' motion was granted consistent with the Lanza decision and other recent authority. [Dkt. Nos. 68, 80]; see also Wachtel v. JTG, Inc., No. 1:17-cv-620, 2017 WL 3498488, at *2 (E.D. Va. Aug. 14, 2017); Muchira v. Al-Rawaf, No. 1:14-cv-770, 2015 WL 1787144, at *12 (E.D. Va. Apr. 15, 2015), aff'd, 850 F.3d 605 (4th Cir. 2017), as amended (Mar. 3, 2017). During the hearing, Victory stated that Cho was seeking to have "fringe benefits" like health insurance included as part of her hourly rate, and the Court expressed its skepticism that this argument would be meritorious, remarking that it had "never heard of somehow amortizing the cost of insurance or whatever, because it makes no difference if she works . . . 40 hours a week or 60 hours a week, the insurance is the same." [Dkt. No. 80] at 11-14. The Court warned Ryu that "Rule 11 requires lawyers to have a good faith basis in fact and law for arguments that they're making to the Court." Id. at 14. That same day, defendants moved for partial summary judgment. [Dkt. No. 69].

The following day, defendants re-extended their previous offer of $60,000 to plaintiff, which was not accepted. [Dkt. No. 82-2] at 15. On April 23, 2019, defendants made a Rule 68 offer of judgment to plaintiff for $20,000 [Dkt. No. 75], which she accepted on April 30 [Dkt. No. 77], after Ryu recalculated her total FLSA damages to be $35,848 when health insurance benefits were excluded, [Dkt. No. 82-4]. The Rule 68 offer stated that defendants would pay "an additional amount for Ms. Cho's reasonable attorney's fees and costs accrued to the date of service of this Offer of Judgment as determined by this Court on petition of Ms. Cho." [Dkt. No. 77-1]. The Court found "judgment in the amount of $20,000 to be a fair and reasonable settlement of plaintiff's Fair Labor Standards Act claim, as well as all other claims in this consolidated action," and ordered that the parties work to resolve the issue of attorney's fees on their own, but if that proved impossible, that plaintiff file a petition for attorney's fees. [Dkt. No. 78]. Defendants offered Ryu $35,000 in attorney's fees and costs on May 3, 2019, which he rejected, instead seeking a total of $92,652.90 in fees and costs. [Dkt. No. 82-2] at 18-19.

Ryu filed the pending motion for attorney's fees and costs on May 22, 2019, in which he seeks $75,841 in fees and $16,636.90 in costs, for a total of $92,477.90. [Dkt. No. 79]. The motion is deficient in multiple ways. Among other defects, counsel did not provide the total number of hours worked by each individual. Instead, the motion explains that Ryu reached the final fee number by taking the total of 826.3 hours that he and his paralegals spent on this litigation and multiplying it by the rate of $350/hour for Ryu and $80/hour for his paralegal, which resulted in $207,422 in fees. Id. at 9, 13. Ryu voluntarily waived fees for 333.6 of these hours based on their lack of "contribution to the final outcome and efficiency," resulting in $151,682 in fees, which Ryu then reduced by 50 percent without explanation, for a final total of $75,841 in fees. Id. at 9. Defendants oppose the motion based on a variety of arguments,

6

including that Ryu should not be able to recover fees for time spent defending the defamation lawsuit; that he grossly over-litigated the case in a manner that ultimately hurt his client; that plaintiff, under Ryu's guidance, rejected reasonable settlement offers without good reason; that the time records are too vague; that any fees related to unsuccessful claims, like the claim for punitive damages, should be omitted; and that if any fee award is granted, it should be reduced to be proportionate to Cho's recovery. [Dkt. No. 82]. Ryu filed a reply, [Dkt. No. 87], and defendants moved to file a sur-reply, [Dkt. No. 89], which the Court denied, [Dkt. No. 90].

## II. DISCUSSION

A. Standard of Review

Pursuant to the FLSA, a prevailing party is entitled to an award of reasonable attorneys' fees and costs. See 29 U.S.C. § 216(b). The prevailing party's counsel bears the burden of establishing that the fees and costs he seeks are reasonable, see Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990), and "the reasonableness of the award is left to the sound judgment of the Court." Matias Guerra v. Teixeira, No. 16-cv-0618, 2019 WL 3927323, at *3 (D. Md. Aug. 20, 2019). In determining whether the requested attorney's fees are reasonable, courts in the Fourth Circuit engage in a three-step analysis.

First, a court must determine a lodestar figure by "multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). "Hours that are 'excessive, redundant, or otherwise unnecessary' must be excluded from the [lodestar] calculation as they were not 'reasonably expended' on the litigation. Page v. Virginia State Bd. of Elections, No. 3:13-cv-678, 2015 WL 11256614, at *2 (E.D. Va. Mar. 11, 2015) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). There is a "strong presumption" that

the lodestar figure is reasonable. Id. (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). In assessing the reasonability of the lodestar figure, the Court must consider the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 226 n.28.[3] The Court must then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Randolph v. PowerComm Constr., Inc., No. 18-1728, 2019 WL 3072555, at *4 (4th Cir. July 11, 2019) (per curiam) (internal quotation marks and citation omitted). Finally, the Court must "take into account the degree of success obtained and award some percentage of the remaining amount based on that assessment." Matias Guerra, 2019 WL 3927323, at *4.

   B.  Analysis

       1.  Calculating the lodestar figure

          a.  Reasonable rate

---

[3] The Fourth Circuit has recognized that "to the extent that any of [the Johnson factors] has already been incorporated into the lodestar analysis, we do not consider [those factors] a second time." E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs, 724 F.3d 561, 570 (4th Cir. 2013); see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (2010).

Although defendants argue that Cho was not a prevailing party on her FLSA retaliation claim, they do not appear to dispute that Cho was a prevailing party at least as to her FLSA unpaid overtime claim. See [Dkt. No. 82] at 15 ("Defendants do not challenge that plaintiff is entitled to an award of attorney's fees."). Accordingly, the question before the Court is whether Ryu's requested fees are reasonable. In determining whether Ryu's hourly rate is reasonable, the Court must consult the hourly rates in the legal community where the action is litigated. See Robinson, 560 F.3d at 244. "To this end, courts in the Eastern District of Virginia employ the Vienna Metro matrix." Gomez v. Seoul Gool Dae Gee Inc., No. 1:19-cv-1121, 2020 WL 354313, at *2 (E.D. Va. Jan. 21, 2020) (collecting cases) (citing Vienna Metro LLC v. Pulte Home Corp., 786 F. Supp. 2d 1090 (E.D. Va. 2011)). Under the matrix, the appropriate hourly rates in the Northern Virginia area based on years of experience are as follows: a) 1-3 years of experience: $250-435; b) 4-7 years of experience: $350-600; c) 8-10 years of experience: $465-640; d) 11-19 years of experience: $520-770; e) 20+ years of experience: $505-820; f) Paralegal: $130-350. See Taylor v. Republic Servs., Inc., No. 1:12-cv-523, 2014 WL 325169, at *5 (E.D. Va. Jan. 29, 2014). Courts in this district have observed that "[t]he matrix's hourly rate calculation accounts for [Johnson] 'factors (3) skill required, (5) customary fee, (9) the experience, reputation, and ability of the attorney, and (12) fee awards in similar cases by providing a stable and consistent rate' for northern Virginia attorneys, 'based on their skill in commercial litigation cases and years of experience.'" Gomez, 2020 WL 354313, at *2 (quoting Entegee, Inc. v. Metters Indus., Inc., No. 1:17-cv-499, 2018 WL 3472819, at *3 (E.D. Va. July 19, 2018)). Ryu has been practicing law for over fifteen years. [Dkt. No. 79] at 13. He reports that over this period, he has litigated cases in five states, including many wage and hour cases. Id. He is also a Korean speaker, which was crucial for communicating with Cho, who apparently speaks Korean and

9

only limited English, and which was also useful because many of the relevant documents in this action were in Korean. Id. at 16.

Based on this level of experience and skill level, Ryu's hourly rate of $350 is reasonable, and well below the range provided by the Vienna Metro matrix for attorneys with his level of experience. This rate is also consistent with previous attorneys' fees awards granted by this Court. See Jackson v. Estelle Place, LLC, No. 1:08-cv-984, 2009 WL 1321506 (E.D. Va. May 8, 2009), (awarding an hourly rate of $350 for attorneys with 11-19 years of experience, which resulted in a total of $36,000 in fees where the plaintiffs were awarded approximately $20,000 in damages combined). Although defendants question Ryu's reputation and ability, claiming that he once swore at them and has displayed an "inefficient use of time and meandering prose," see [Dkt. No. 82] at 25, the Court does not find that these factors justify a lower hourly rate, as Ryu's hourly rate is already below the range provided by the Vienna Metro matrix for attorneys with his level of experience. Moreover, defendants' concerns about Ryu's inefficient use of time will be captured in the analysis of the time expended. Ryu's paralegals' rate of $80 per hour is also well below the Vienna matrix range and evidently reasonable, particularly given that his two paralegals have a combined 22 years of paralegal experience. [Dkt. No. 79] at 14. The Court is therefore satisfied that Ryu has met his burden to provide "specific evidence of the prevailing market rates in the relevant community," Plyler, 902 F.2d at 277 (internal quotation marks and citations omitted), and that the hourly rates used are reasonable.

b. Reasonable number of hours

A central dispute between the parties is whether the amount of time Ryu and his staff spent on this litigation was reasonable. Ryu's timesheets demonstrate that it was not. Although Ryu has voluntarily waived some of his hours and arbitrarily reduced his total fee award by half,

the number of hours he spent remains unreasonable even when taking into account these reductions.[4] For example, after defendants filed their defamation lawsuit against Cho in California state court, Ryu filed a two-and-a-half-page Notice of Removal, based on diversity of the parties.[5] See No. 19-cv-111 [Dkt. No. 1]. Ryu billed 8.7 hours[6] for producing this pro forma notice which should not have taken more than two hours to produce. Ryu and his paralegals also billed 17.1 hours[7] for drafting an 8-page answer to defendants' complaint, which mainly consisted of blanket denials and boilerplate affirmative defenses. Ryu also billed 1.3 hours,[8] or $455, for sending a "[r]esponse to the opposing counsel's email conveying the request of Mr.

---

[4] The sheer length of Ryu's motion for attorney's fees demonstrates his excessive approach to litigation; he submitted a total of 912 pages, including attachments, in support of his motion and reply brief.

[5] Defendants argue that Ryu should not recover fees for time spent defending the California defamation lawsuit, because attorneys' fees are ordinarily not available in such suits. The Court finds that wholesale exclusion of those hours is inappropriate because, as other district courts have held, the "state-court suit was an integral part" of plaintiff's other claims. Prater v. Commerce Equities Mgmt. Co., No. 07-cv-2349, 2008 WL 5140045, at *6 (S.D. Tex. Dec. 8, 2008) (declining to reduce the fees award for time spent on a state-court case allegedly filed in retaliation for plaintiff's protected activity under the FLSA because "[t]he fees incurred in defending that suit are related to this FLSA case"); see also Broome v. Biondi, 17 F.Supp.2d 230, 234 (S.D.N.Y.1997) (holding that no reduction in fees was necessary for hours spent defending defamation claims, even if state law did not allow for attorney's fees in such claims, because "[p]revailing over defendants' defamation claim required the examination and preparation of facts closely related to plaintiffs' case in chief."). This determination is ultimately of little consequence to the amount of fees awarded, because the Court will exclude many of the hours spent defending against the defamation suit for the independent reason that they were excessive and unnecessary.

[6] Ryu billed 0.6 hours on October 22, 2018, 1.6 on October 29, 1.6 on October 30, 0.6 on October 31, 0.7 on November 1, 1.0 on November 2, 1.2 on November 5, 0.9 on November 6, 0.2 on November 7, and 0.3 on November 8. [Dkt. No. 79-15].

[7] Ryu billed 4.8 hours on November 2, 2018, 0.5 hours on November 7, 3.4 hours on November 9, 0.9 hours on November 12, 4.1 hours on November 13, 1.2 hours on November 21, and 0.7 hours on November 27. His paralegal billed 1.5 hours on November 8, and 0.1 hours on November 26. [Dkt. No. 79-15].

[8] Ryu billed for this work on February 25, 2019. [Dkt. No. 79-15].

Kim to change the date of deposition from March 4 to March 15," a task that should have taken no more than a few minutes. In addition, although Ryu billed 10.3 hours for Cho's March 11, 2019 deposition, defendants correctly point out that Ryu unnecessarily prolonged the deposition by making "speaking objections and gratuitous comments," [Dkt. No. 46] at 9, which led defendants to file a motion to compel a second deposition of Cho, which was granted, [Dkt. No. 53].[9] These examples illustrate the excessiveness and inefficiencies of Ryu's approach to this litigation.

Ryu also continued litigating this action even when it was no longer in his client's best interest. On February 25, 2019, defendants offered Cho a settlement of $30,000 in damages and $15,000 in attorney's fees, under which she would have received $10,000 more than what she ultimately accepted under defendants' Rule 68 offer of judgment. Had Ryu not pressed for unrealistically high attorney's fees and damages of over $200,000, his client would have obtained a better outcome, and his fees would have stopped accumulating. A district court "has discretion to consider settlement negotiations in determining the reasonableness of fees." McAfee v. Boczar, 738 F.3d 81, 90 (4th Cir. 2013), as amended (Jan. 23, 2014) (internal quotation marks and citations omitted). Had the case settled on February 25, 2019, Ryu would have only accrued $98,476 in attorney's fees, less than half of the $207,422 he ultimately accrued. It is permissible to "subsume[]" this "prolonged litigation caused by a failure to settle . . . in the time component of the lodestar calculation," as one of many examples of Ryu's unreasonable expenditure of hours. Id. at 91.

---

[9] Defendants ask that all fees associated with Cho's deposition be excluded at step 2 of the analysis. Because the hours spent on Cho's deposition were closely related to her FLSA case, wholesale exclusion of these hours at step 2 would be inappropriate, but the Court will incorporate the inefficiencies associated with Cho's deposition in calculating the lodestar.

An additional basis for reducing the hours in the fee request is that Ryu's time records lack sufficient information to support the number of hours for which he seeks fees. The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." Hensley, 461 U.S. at 437. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. at 433. This is particularly applicable to cases like this one which included both plaintiff's FLSA claim and the defamation issue. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task," also known as block billing. Guidry v. Clare, 442 F.Supp.2d 282, 294 (E.D. Va. 2006). Ryu's time records include multiple instances of block billing. For example, in one entry, Ryu billed 1.8 hours for "attention to status of Joong Ang VA; legal research related to the [unspecified] claims; research SCC documents." [Dkt. No. 79-15]. In another, he billed 3.1 hours for "meeting with client regarding settlement; calculation of damages; review of deposition transcripts." Id. Courts routinely reduce an attorney's hours to account for block billing. See, e.g., Hurd v. Cardinal Logistics Mgmt. Corp., No. 7:17-cv-319, 2019 WL 6718111, at *4-5 (W.D. Va. Dec. 10, 2019) (collecting cases in which courts have reduced an attorney's hours by five to twenty percent for block billing). "Vague descriptions may also warrant the reduction of an award." Lee Supinger v. Virginia, No. 6:15-cv-17, 2019 WL 1461071, at *3 (W.D. Va. Apr. 2, 2019). Ryu's time records are replete with vague and sometimes unintelligible entries, such as "[o]rganize case documents," "PDF and send to opposing counsel," "wrapping up of janice cho deposition," "trial strategy," "[l]itigation planning and scheduling strategy," "attention to joint

13

discovery plan," and "supp 9th."[10] [Dkt. No. 79-15]. Without more detail about how this time was actually spent, "the Court is left to hypothesize whether or not this time is excessive given the descriptions." Supinger, 2019 WL 1461071, at *3. Based on the record of excessive litigation and inadequacy of Ryu's time records, the Court will reduce the lodestar by 35 percent to $49,296.65.[11]

### c. Johnson factors

Most of the Johnson factors have already been subsumed in the Court's lodestar analysis, and none of the factors warrant additional reductions or enhancements for the following reasons.

#### i. The time and labor expended

The Court has already considered the excessive amount of time and labor Ryu and his staff expended on this litigation and reduced the lodestar figure accordingly. No further reduction is necessary.

#### ii. The novelty and difficulty of the questions raised

The issues involved in this action were not particularly novel and do not warrant an enhancement. Although Ryu portrays the retaliation suit as novel because the alleged retaliation took the form of a lawsuit instead of a termination or other traditional adverse action, this is

---

[10] Ryu seeks payment for all of these entries, but the time entries he has waived are even more egregiously vague. For example, one entry simply states "revision," with no further information. Others state "[a]dvised MR" and "[l]egal research," without additional explanation. [Dkt. No. 79-15].

[11] Normally, attorneys submitting fee petitions include a breakdown of the total number of hours spent by each attorney and paralegal and explain the total amount of fees attributable to each individual. Ryu's petition, despite its length, does not include any such breakdown. Instead, he has simply provided a list of time entries and calculated the total amount of fees he claims are owed, without breaking the number of hours down by staff member. This has made the typical method of calculating the lodestar extremely difficult, and the Court has accordingly made percentage reductions across the board as reflected above. This approach nonetheless results in a reasonable lodestar figure, particularly given that all individuals associated with Cho's case, including Ryu's paralegals, spent an excessive number of hours litigating the case.

actually a fairly settled issue in this circuit. The Fourth Circuit held more than twelve years ago

that an FLSA plaintiff may make out a retaliation claim by alleging that his employer filed a

lawsuit against him based on a "retaliatory motive and without a reasonable basis in fact or law."

Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008). In addition, although Ryu is correct

that the small newspaper exemption to the FLSA does not appear to be litigated particularly

frequently, this issue is less novel and difficult than Ryu's characterization would suggest. For

example, Ryu contends that the exemption presents novel and difficult issues because 29 U.S.C.

§ 213(a)(8) exempts certain newspapers "with a circulation of less than four thousand," but

"there is no definition for 'circulation' for daily newspapers," [Dkt. No. 79] at 9; however, the

Department of Labor has in fact defined circulation as used in that statute. See Department of

Labor Field Operations Handbook, Chapter 23, available at

https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch23.pdf ("The word

'circulation' as used in section 13(a)(8) includes all copies of the publication circulated or

distributed by mail or otherwise, whether paid for or free."). The other issues raised by Ryu were

neither so novel nor difficult as to justify the excessive number of hours he spent litigating this

civil action, and they do not support increasing the lodestar.[12]

> ### iii.     The skill required to properly perform the legal services rendered

The Court incorporated this factor into its analysis of the lodestar, and no further

adjustment is appropriate.

---

[12] Although Ryu argues that the availability of punitive damages for FLSA retaliation claims is a novel issue, he claims to have already waived all hours associated with Cho's punitive damages argument.

iv.     The attorney's opportunity costs in pressing the instant litigation

Ryu argues that his opportunity costs were high because he was "hesitant to accept[] new cases" while representing Cho. [Dkt. No. 79] at 12. He further argues that working on Cho's case was risky because JA Wash. had gone out of business, making the likelihood of recovery low, and because the defendants' resistance to the lawsuit was "strong" and "vicious." Id. at 12. These arguments do not suggest that Ryu's alleged lost opportunity costs were so significant as to warrant any upward adjustment. Concerns about opportunity costs "are typically encountered in wage and hour claims," Matias Guerra, 2019 WL 3927323, at *7, and they do not make Ryu's situation unusual or otherwise worthy of an enhanced award. This is particularly true given that Ryu does not provide examples of any cases he turned down or opportunities he did not pursue due to his involvement in this action; he merely states that he was "hesitant" to take on new matters.

v.     The customary fee for like work

The Court incorporated this factor into its analysis of the lodestar, and no further adjustment is appropriate.

vi.     The attorney's expectations at the outset of the litigation

Because Ryu was hired on a contingency basis for the FLSA lawsuit, he was aware from the beginning that there was a risk of recovering no fees whatsoever for his work.[13] Moreover, as defendants argue, because attorney's fees are not typically available for defending defamation

---

[13] Ryu's willingness to take this case on a contingency basis is a factor cutting in his favor, but the Court has already taken this and the other factors cutting in Ryu's favor into account by reducing Ryu's hours by only 35 percent, when a larger reduction might otherwise have been appropriate.

cases, Ryu could not have reasonably expected to receive full compensation for those fees. Therefore, the lodestar figure will not be adjusted for this factor.

> vii. The time limitations imposed by the client or circumstances

There do not appear to have been unique time limitations imposed in this case. Accordingly, no adjustment on this basis is warranted.

> viii. The amount in controversy and the results obtained[14]

The lodestar figure of $49,296.65 is roughly consistent with the $20,000 result Cho obtained, taking into account that she initially sought a much larger award.[15] Although the lodestar figure exceeds the amount Cho received, disparities of this sort are typical in FLSA cases. See, e.g., Gomez, 2020 WL 354313, at *1 (awarding approximately $13,429 in fees where the plaintiff received a $6,500 judgment after failed settlement negotiations in which she sought a larger damages award). Accordingly, no additional adjustment on this basis will be made at this stage.

> ix. The experience, reputation and ability of the attorney

The Court already incorporated this factor into its analysis of the lodestar. Moreover, Ryu's fifteen years of experience underscore that the number of hours he spent on this litigation

---

[14] Although "the Fourth Circuit has deemed it mandatory to apply all the Johnson factors at the first stage of this assessment, this raises a concern that an award could be reduced twice for the same deficiency," because the eighth Johnson factor, "the amount in controversy and the results obtained," overlaps with the third step in the analysis, at which courts are asked to award some percentage of the remaining amount, depending on the degree of success the plaintiff enjoyed. Matias Guerra, 2019 WL 3927323, at *7. "With this concern in mind," the Court "will follow the direction of the Fourth Circuit and apply all the Johnson factors when assessing the lodestar amount"; "[h]owever, the ultimate impact of the degree of success in this case will be considered in step three of the analysis." Id.

[15] Ryu contends that the Court should consider the total recovery in this case to be $270,000, because Cho not only obtained $20,000 in damages, but also avoided paying the $250,000 that defendants demanded in their defamation suit. He has provided no case law supporting this argument.

was unreasonable. Although spending additional time on straightforward, pro forma documents might be understandable for an attorney just beginning his practice, an attorney with Ryu's years of experience should have been able to complete the referenced tasks much more efficiently. Accordingly, this factor supports the reduction of the hours used to calculate the lodestar.

x.  The undesirability of the case within the legal community in which the suit arose

Ryu argues that this case was undesirable because it involved suing an employer that had gone out of business and was referred to Ryu by another attorney who did not want to handle the case. Ryu also asserts that the case was undesirable because he claims that "lawyers serving the Korean community usually are reluctant to sue . . . large newspaper companies . . . because they are afraid of the newspaper's influence on publicity or public opinion." [Dkt. No. 79] at 17. Even assuming that these assertions are true, these considerations have already been taken into account in calculating the lodestar.

The Court is also aware that "cases with individual wage and hour claims are generally less desirable to attorneys as the potential recoverable amount is likely much smaller than a class action," and "[c]ases taken on contingency, although a common practice, are even less desirable as there is no guarantee of payment or reimbursement of expenses," Matias Guerra, 2019 WL 3927323, at *7. "[T]hese concerns are typically encountered in wage and hour claims." Id. All these considerations have already been taken into account in calculating the lodestar, and no additional adjustment is appropriate.

xi.  The nature and length of the professional relationship between attorney and client

There is no evidence that "the nature of any prior relationship between the attorney[] and the client had any particular impact on the appropriate billing rates." Garcia v. Montgomery Cty.,

18

Maryland, No. 12-cv-3592, 2018 WL 1441189, at *8 (D. Md. Mar. 22, 2018). Although Ryu observes that he "does not expect repeat legal business from [p]laintiff after this case," [Dkt. No. 79] at 18, that outcome is typical in FLSA cases and does not warrant any further adjustment to the lodestar.

xii.    Attorneys' fees awards in similar cases

The Court incorporated this factor into its analysis of the lodestar and no further adjustment is appropriate. Accordingly, the lodestar figure will remain $49,296.65.

2.  Successful and unsuccessful claims

At the second stage of the analysis, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to the successful ones." McAfee, 738 F.3d at 91 (citation omitted). A claim is unrelated if it is "based on different facts and legal theories." Hensley, 461 U.S. at 434. Unrelated claims are distinguished from related claims as follows:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

Id. at 440. Defendants argue that the Court should exclude all fees and costs related to Cho's deposition, the entry of default and motion for default judgment, the request for punitive damages, the retaliation claim, and the summary judgment motions. The Court will make a small reduction on this basis. Because Ryu unreasonably opposed defendants' motion to set aside the default, even though the default was due to Ryu's own failure to properly serve defendants, and Ryu's opposition was unsuccessful because the default was ultimately set aside, the Court will

subtract the $2,451 billed for the 11.4 hours spent on the default issue.[16] This results in an award of $46,845.65.

No additional adjustments on this basis are appropriate. Ryu claims that he has waived all time expended on the issue of punitive damages, so that amount has already been excluded from the lodestar figure. Ryu has also already waived hours spent on certain other unsuccessful filings, such as the opposition to defendants' counsel's motion to withdraw. Moreover, Ryu's work on the other referenced issues was closely related to Cho's FLSA claim. To the extent defendants are arguing that the Court should exclude the time Ryu spent on dubious legal arguments, such as the argument that Cho's overtime rate included fringe benefits paid for by the employer, that reduction was taken into account in developing the lodestar. Moreover, there is no precise way of making this adjustment because Ryu's time records are not separated by legal theory.

### 3. Degree of success

"At step three, after determining the lodestar amount and subtracting for fees related to unsuccessful claims, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Randolph, 2019 WL 3072555, at *4 (internal quotation marks and citations omitted). "Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006). "The degree of success is measured by two reference points, namely the amount sought at the outset of the litigation and the damages and relief awarded."

---

[16] Ryu's paralegal billed 1.4 hours on October 2, 2018, 0.9 on October 3, and 3.4 on October 4, and Ryu billed 3.2 hours on October 4, 1.5 hours on October 17, and 1.0 hours on October 18. [Dkt. No. 79-15]. If these hours were not being subtracted at step 2 of the analysis, they would nonetheless need to be excluded from the lodestar, because they were excessive given the simplicity of the relevant task. Ryu and his paralegals billed a total of 8.9 hours for drafting a one paragraph, pro forma Request for Entry of Default, and a one-page, seven-sentence affidavit of counsel. [Dkt. No. 9]. Those documents should not have required more than an hour to prepare.

Matias Guerra, 2019 WL 3927323, at *9. The Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." Id. (quoting City of Riverside, 477 U.S. 561, 574 (1986)); see also Nigh v. Koons Buick Pontiac GMC, Inc., 478 F.3d 183, 190 (4th Cir. 2007) (holding that courts should not "reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall"). Instead, the amount recovered is "just one of many factors to consider." Matias Guerra, 2019 WL 3927323, at *9 (citing City of Riverside, 477 U.S. at 574). The Fourth Circuit has nonetheless stated that courts must give "primary consideration to the amount of damages awarded as compared to the amount sought" to "constrain a court's discretion in setting an award." Doe, 435 F.3d at 506 (internal quotation marks and citations omitted).

Ryu achieved some success for his client in this action, namely securing $20,000 in damages for his client who initially sought $26,454.58 in actual damages; however, Cho's award did not include the $26,454.58 in liquidated damages she sought, let alone the punitive damages and health insurance benefits to which Ryu initially believed she was entitled.[17] Incorporating these other forms of damages, Ryu initially sought approximately $250,000 for his client, and the amount she ultimately received was modest compared to this amount. Accordingly, an additional reduction of five percent to Ryu's fees is appropriate. This results in an award of $44,503.37. Although this award is more than double Cho's recovery, this is not an uncommon result, as "attorneys' fees awards may 'substantially exceed [] damages' in FLSA cases." Atkins v.

_____

[17] Although Ryu asserts that he excluded the hours he spent on the punitive damages issue from his requested award, the Court must still take the requested punitive damages into account when evaluating the degree of success he achieved for his client.

Sunbelt Rentals, Inc., No. 14-cv-1717, 2016 WL 3647610, at *4 (D. Md. June 30, 2016) (internal citation omitted).

### 4. Costs

"[D]istrict courts have discretion to determine the costs that will be assessed against losing defendants in FLSA cases." Andrade, v. Aerotek, Inc., 852 F. Supp. 2d 637, 644 (D. Md. 2012). "The costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" Almendarez v. J.T.T. Enterprises Corp., No. 06-cv-68, 2010 WL 3385362, at *7 (D. Md. Aug. 25, 2010) (quoting Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988)). This may include "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." Id. Ryu has provided an itemized list of his costs, which totals $16,636.90. One major problem with Ryu's list of costs is that it includes unreasonable expenses incurred after it was no longer in his client's interest to continue litigating the matter. On February 25, 2019, defendants offered Cho $30,000 in damages and $15,000 for her attorney's fees, which would have put Cho in a better position than the ultimate offer of $20,000 she accepted. The expenses Ryu incurred after this date were not reasonable, and no justification is provided for many of them. For example, Ryu paid $900 for videographers for two depositions, without providing any explanation for why videotaping was necessary. [Dkt. No. 75-16]. Accordingly, the Court will award Cho only those reasonable expenses incurred through February 25, 2019, for a total of $5,594.02.

## III.   CONCLUSION

For the reasons stated above, Ryu's motion will be granted in part and Ryu will be awarded a total of $50,097.39, consisting of $44,503.37 for attorney's fees and $5,594.02 for costs, by an Order to be issued with this Memorandum Opinion.

Entered this 4ᵗʰ day of March, 2020.

Alexandria, Virginia

/s/ _____

Leonie M. Brinkema
United States District Judge